[Cite as *State v. Mogle*, 2021-Ohio-1741.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-2 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-153 |
| | : | |
| RANDY R. MOGLE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of May, 2021.

. . . . . . . . . . .

JAMES D. BENNETT, Atty. Reg. No. 0022729, Assistant Prosecuting Attorney, Darke County Prosecutor's Office, 504 South Broadway, Greenville, Ohio 45331
  Attorney for Plaintiff-Appellee

ALEXANDER S. PENDL, Atty. Reg. No. 0093792, 121 West Third Street, Greenville, Ohio 45331
  Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant Randy R. Mogle appeals from his convictions for aggravated arson and engaging in a pattern of corrupt activity, which followed his pleas of no contest after the trial court overruled Mogle's two motions to suppress statements made during three custodial interrogations. For the reasons that follow, we affirm the judgment of the trial court.

## I.      Factual and Procedural Background

{¶ 2} According to the record before us, Mogle, who is a resident of Greenville, Darke County, Ohio, was a suspect in theft offenses which occurred in Indiana. On June 10, 2019, Mogle was arrested on a felony warrant and transported to the Darke County Sheriff's Office, where he was interviewed by law enforcement officers from Indiana for approximately 2.5 hours. Because he was also a suspect in numerous arson offenses in Darke County, he was subsequently interviewed by Christopher Clark, a Darke County Sheriff's Department Detective. That interview, which occurred immediately after the interview by the Indiana authorities, lasted for approximately one hour.

{¶ 3} On June 12, 2019, Clark again interviewed Mogle at Mogle's request. The interview, which was conducted in the Darke County Jail, lasted approximately 87 minutes. Mogle was later transferred to a jail facility in Indiana. On June 13, Clark interviewed Mogle a third time at the Indiana jail. The interview lasted approximately one hour.

{¶ 4} On June 25, 2019, Mogle was indicted in Darke County on 44 counts of arson, 11 counts of aggravated arson, one count of engaging in a pattern of corrupt activity, and one count of conspiracy to engage in a pattern of corrupt activity. Mogle

filed a motion to suppress statements made during the June 10, 2019 interview with Detective Clark. He later filed a second motion to suppress statements made during the two subsequent interviews with Clark. A suppression hearing was conducted, and the trial court overruled the motions to suppress.

{¶ 5} Thereafter, Mogle entered pleas of no contest to one count of aggravated arson and one count of engaging in a pattern of corrupt activity. The remaining counts were dismissed. Mogle was sentenced to a term of ten years in prison on each offense, with the two sentences to be served concurrently.

{¶ 6} Mogle appeals.

## II. Analysis

{¶ 7} Mogle's sole assignment of error states the following:

THE TRIAL COURT ERRED BY OVERRULING DEFENDANT-APPELLANT'S MOTIONS TO SUPPRESS.

{¶ 8} Mogle asserts that the trial court's denial of his motions to suppress was erroneous. In support, he claims his statements were coerced by improper police conduct.

{¶ 9} The Fifth Amendment to the United States Constitution provides that no person shall be compelled to be a witness against himself. In order to ensure that this right is protected, statements resulting from custodial interrogations are admissible only after a showing that the police have followed the procedural safeguards described in *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This court has further explained this protection in *State v. Porter*, 178 Ohio App.3d 304, 2008-Ohio-

4627, 897 N.E.2d 1149 (2d Dist.), wherein we stated:

> In *Miranda v. Arizona*, * * *, the Supreme Court was concerned that the circumstances of custodial interrogation and interrogation techniques police are apt to use may be so overbearing as to render involuntary a suspect's decision to waive his Fifth Amendment privilege against incriminating himself in criminal activity by a confession of guilt.   To avoid that difficulty, *Miranda* required a prescribed warning of rights that must precede custodial interrogation, and further held that when those rights are waived by the suspect in custody, any subsequent statement the suspect makes is presumed to be voluntary.
>
> The *Miranda* presumption applies to the conditions inherent in custodial interrogation that compel the suspect to confess.   It does not extend to any actual coercion police might engage in, and the Due Process Clause continues to require an inquiry separate from custody considerations and compliance with *Miranda* regarding whether a suspect's will was overborne by the circumstances surrounding his confession. *Dickerson v. United States* (2000), 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405.   Voluntariness of a confession and compliance with *Miranda* are analytically separate inquiries.   *State v. Petitjean* (2000), 140 Ohio App.3d 517, 748 N.E.2d 133; *State v. Chase* (1978), 55 Ohio St.2d 237, 378 N.E.2d 1064.   A confession may be involuntary even when *Miranda* warnings are given, or even if *Miranda* warnings are not required. *Dickerson*; *Petitjean*.

*Id.* at ¶ 13-14.

**{¶ 10}** The Ohio Supreme Court has declared that, "[i]n deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus, *overruled on other grounds*, 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 (1978); *State v. Hall*, 2018-Ohio-2321, 114 N.E.3d 730, ¶ 36 (2d Dist.).

**{¶ 11}** We begin by noting that there is no dispute that Mogle was properly advised of his *Miranda* rights prior to each of the three interviews with Detective Clark. Thus, the only issue before us is whether the trial court erred in its conclusion that there was no police misconduct that occurred during the interviews that caused Mogle to make incriminating statements.

**{¶ 12}** The first interview, which was audio- and video-recorded, lasted slightly more than three hours when considered in conjunction with the interview by Indiana law enforcement officers. Clark was involved in the last hour of the interview. Mogle's hands were handcuffed behind his back for the last two hours of the interview. He was seated on a couch and did not make any complaints of discomfort until the end of the interview, at which point he indicated the handcuffs were causing his hands to fall asleep. He also asked to use the restroom, and he was permitted to do so within one minute of making the request. The interview ended at that time.

**{¶ 13}** After reviewing the entirety of the interview, we cannot conclude that the

circumstances were overly coercive. While this interview was lengthy and conducted with Mogle in handcuffs, he did not express any discomfort or request a break until the end of Clark's portion of the interview. We further conclude the trial court did not err in finding no basis for Mogle's claim that Clark made improper promises of leniency in exchange for his cooperation. Importantly, Mogle did not make any admissions during the interview regarding the arson offenses. Thus, we cannot conclude this interview was tainted by improper conduct.

{¶ 14} The record indicates that the second interview was conducted at Mogle's request. It took place in the Darke County jail, and we have only an audio-recording of this interview, which lasted 87 minutes. Mogle does not claim that he was subjected to any physical deprivations during this interview. However, he does take exception to statements made by Clark throughout the interview. Specifically, Clark made statements indicating the prosecutor would give Mogle more favorable treatment if Mogle made a confession. Clark also indicated that the judge was "light on sentencing," because he did not believe that prison sentences resulted in rehabilitation. Clark also repeatedly threatened to arrest Mogle's girlfriend for obstruction of justice, which he claimed would cause Children's Services to take custody of the couples' child. Finally, Clark stated that the arson offenses would be misdemeanors because the buildings involved were abandoned and were valued at less than $150,000 each.

{¶ 15} Mogle did make possibly inculpatory statements during this interview when he stated that he was in the area with another suspect when that suspect set fire to a barn and a home. However, Mogle asserted that he did not go onto the subject properties, and he denied knowing the other suspect was setting fires. Mogle claimed

he did not learn of the fires until the other suspect later informed him that the structures had been set on fire. Throughout the interview, Mogle insisted that he did not burn any structures.

{¶ 16} We begin with Clark's statements in which he claimed the prosecutor would be inclined to treat Mogle more favorably were he to "tell the truth" and that the judge tended to be lenient in sentencing. This court has previously held that statements indicating a defendant's cooperation will be considered and may result in more lenient treatment do not constitute undue influence or coercion. *State v. Stringham*, 2d Dist. Miami No. 2002-CA-9, 2003-Ohio-1100, ¶ 16. Further, Clark did not claim the judge would be lenient in sentencing Mogle. Instead, he merely noted that the judge tended to disfavor prison sentences. Nothing in the interview causes us to disagree with the trial court's determination that Clark's conduct did not render involuntary Mogle's arguably inculpatory statements.

{¶ 17} We next turn to Clark's repeated threats to arrest Mogle's girlfriend for obstruction of justice based upon the girlfriend's lying to Clark concerning Mogle's whereabouts. These threats were repeated during the third interview. Thus, our analysis of this issue relates to both the second and third interviews.

{¶ 18} "[T]hreats to arrest members of a suspect's family may cause a confession to be involuntary." *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 72, quoting *United States v. Finch*, 998 F.2d 349, 356 (6th Cir.1993). "The issue 'turns on * * * whether the threat could have been lawfully executed.' " *Id.*, quoting *United States v. Johnson*, 351 F.3d 254, 263 (6th Cir.2003). "If the police had probable cause to arrest the person in question, a threat to do so is not coercive and thus does not render

a confession involuntary." *Id.*

{¶ 19} Mogle does not claim that Clark lacked probable cause to arrest his girlfriend. Indeed, Clark cited evidence the girlfriend lied to him when he asked her about Mogle's location. Thus, we cannot say the threat to arrest the girlfriend constituted coercive conduct which made Mogle's arguably inculpatory statements involuntary.

{¶ 20} Perhaps more problematic was Clark's assertion that, upon Mogle's girlfriend's arrest, Children's Services would take custody of their child. But Clark's threat did not cause Mogle to change his version of events or to otherwise further inculpate himself. Thus the threat, even if coercive, did not trigger any admission or other statement to suppress.

{¶ 21} Finally, we turn to Mogle's claim that Clark misstated the law when he indicated that the arsons at issue would constitute misdemeanors, rather than felonies, based upon his belief that the subject buildings had been abandoned and were valued at less than $150,000.[1] "[A] police officer's misstatement of the law may render a confession involuntary." (Citation omitted.) *State v. Western*, 2015-Ohio-627, 29 N.E.3d 245, ¶ 38 (2d Dist.).

{¶ 22} We note that, immediately after Clark made the above-cited statement, Mogle said, "How do you figure that? I never heard of that." Exh. 2. Mogle then cited to the arson statute, R.C. 2909.03, at which point he and Clark reviewed the correct statutory language. Clark then noted that he had incorrectly stated the relevant monetary amount. Thus, it appears that Mogle was well-acquainted with the relevant

---

[1] The portion of the statute referenced by Clark, R.C. 2909.03(D)(2)(b), actually elevates certain arson offenses from misdemeanors to felonies provided the properties are valued at $1,000 or more.

arson provisions and that any misstatement by Clark had no undue influence on Mogle. Therefore, we conclude this claim lacks merit.

{¶ 23} During the third interview, Mogle continued to assert he was in the area with the actual arsonist, but, otherwise, he made no inculpatory statements. While Clark continued to assert that he would charge Mogle's girlfriend, Mogle continued to deny involvement in any arsons. We find nothing in the third interview upon which to conclude the trial court erred in denying the motions to suppress.

{¶ 24} In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994); *State v. Knisley*, 2d Dist. Montgomery No. 22897, 2010-Ohio-116, ¶ 30. Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Retherford* at 592. "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

{¶ 25} The interviews demonstrate that Mogle was well-acquainted with the legal system and the law. He did not appear to be in discomfort during any of the interviews, and there was no evidence of physical deprivation or threats. Mogle also did not appear to be intimidated by the length or frequency of the interviews. While he did make statements that placed him near the relevant crime scenes, Mogle adamantly denied involvement with the arsons.

{¶ 26} Based upon this record, we cannot conclude the trial court erred in

overruling Mogle's motions to suppress. Accordingly, the sole assignment of error is overruled.

### III. Conclusion

**{¶ 27}** The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

James D. Bennett
Alexander S. Pendl
Hon. Jonathan P. Hein