[Cite as *State v. Luther*, 2021-Ohio-2697.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28908 |
| | : | |
| v. | : | Trial Court Case No. 2020-CR-865 |
| | : | |
| MICHAEL JAMES LUTHER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 6th day of August, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

CHARLES M. BLUE, Atty. Reg. No. 0074329, 401 East Stroop Road, Kettering, Ohio 45429
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Michael James Luther, appeals from his conviction in the Montgomery County Court of Common Pleas after he pled no contest to four counts of rape of a minor less than ten years of age and 18 counts of pandering obscenity involving a minor. In support of his appeal, Luther contends that the trial court erred by overruling his motion to suppress statements that he made to investigating officers during an interview. Luther claims that his statements should have been suppressed because they were the product of an illegal seizure of his person in violation of the Fourth Amendment. Luther also contends that his trial counsel provided ineffective assistance by failing to raise the Fourth Amendment argument during the suppression proceedings. For the reasons outlined below, the judgment of the trial court will be affirmed.

## Facts and Course of Proceedings

{¶ 2} On March 25, 2020, a Montgomery County grand jury returned an indictment charging Luther with four counts of rape of a minor less than ten years of age in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree. The indictment also charged Luther with 18 counts of pandering obscenity involving a minor in violation of R.C. 2907.321(A)(1), a felony of the second degree. Following his indictment, Luther pled not guilty to the charges and moved to suppress all the statements he made to investigating officers during an interview on March 16, 2020.

{¶ 3} In support of his motion to suppress, Luther argued that his interview with the investigating officers violated his Fifth Amendment privilege against self-incrimination and his Sixth Amendment right to counsel. Specifically, Luther claimed that he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights. Luther claimed that

prior to waiving those rights, the investigating officers deceived him by leading him to believe that he was being questioned about a juvenile court matter as opposed to criminal activity. Luther therefore claimed that his statements confessing to the offenses at issue were involuntary and should be suppressed. Luther also claimed that he did not unambiguously and unequivocally waive his right to counsel during the interview.

{¶ 4} On June 16, 2020, the trial court held a hearing on Luther's motion to suppress. The only witness to testify at the hearing was Officer Joshua Spears of the Dayton Police Department. Off. Spears testified that he was on a task force involving child safety issues that worked in conjunction with the Federal Bureau of Investigation ("FBI"). Off. Spears testified that in early 2020, a citizen found a smartphone memory card in a bingo hall parking lot and turned it into police after discovering the memory card contained child pornography. Off. Spears testified that he examined the memory card and determined that it contained images and videos of a young disabled girl in a wheelchair being forced to perform oral sex on an adult male. Off. Spears testified that the face of the adult male could not be seen in the images, but that the images did reveal identifying marks on the adult male's body, i.e., an arm tattoo.

{¶ 5} In an effort to identify a suspect, Off. Spears testified that he researched the corresponding address of a license plate that was depicted in some of the images on the memory card. Off. Spears testified that he went to the street of that address and, by referencing a fire hydrant, he determined that it was the area where some of the images had been taken. Off. Spears testified that he obtained the address of the home that was near the fire hydrant and then went to a local school and investigated whether any names were registered to that address. After further investigation, Off. Spears learned that

Luther was tied to the address near the fire hydrant and to the young girl in the pornographic images. Luther then became a suspect in the investigation.

**{¶ 6}** After Luther became a suspect, Off. Spears learned that Luther was employed at the Chewy Facility in northern Montgomery County, Ohio. Off. Spears testified that on the morning of March 16, 2020, he and FBI agent Andrea Kinzig made contact with Luther at the Chewy Facility while Luther was taking a smoke break. Off. Spears testified that he and Agent Kinzig were in plain clothes when they approached Luther. Off. Spears, however, testified that he was wearing a Dayton Police lanyard and his police badge on his belt. Off. Spears also testified that upon making contact with Luther, he informed Luther that he was with the Dayton Police Department and that Agent Kinzig was with the FBI.

**{¶ 7}** After identifying himself and Agent Kinzig, Off. Spears testified that he told Luther that he was investigating a case "concerning the safety of the children that [Luther's] been around * * * including his biological son." Trans. (June 16, 2020), p. 17. Although Off. Spears told Luther that he was doing a background investigation, Off. Spears testified that he made it clear to Luther that he was investigating "[Luther's] past involving the safety of all the kids * * * in his life." *Id.* at 17-18. Off. Spears testified that he asked Luther whether his emergency custody hearing in juvenile court was still going forward, and that Luther indicated it was. Off. Spears also testified that he asked Luther if he could check out his home and interview him, and that Luther consented to both of these requests.

**{¶ 8}** Continuing, Off. Spears testified that Luther rode with him and Agent Kinzig to Luther's residence in Dayton. Off. Spears testified that Luther was not handcuffed

during this time and that Luther rode in the front-passenger seat of his unmarked vehicle. When they arrived at Luther's residence, Off. Spears took pictures at the residence and spoke to Luther's brother. Off. Spears testified that he was at Luther's residence for approximately ten minutes. Thereafter, Off. Spears testified that he drove Luther to the Dayton Safety Building for purposes of conducting an interview. Other than small talk about the weather and leisure activities, Off. Spears testified that neither he nor Agent Kinzig asked Luther any questions during the transport.

{¶ 9} Luther's interview with the officers was video recorded and admitted into evidence as State's Exhibit 1. The video recording established that Off. Spears, Agent Kinzig, and Luther were all present during the interview. The video also established that before asking Luther any questions, Off. Spears presented a pre-interview form to Luther that set forth Luther's *Miranda* rights. The pre-interview form was admitted into evidence as State's Exhibit 2. The following is a summary of the events depicted in the video of Luther's interview.

{¶ 10} Initially, while explaining the pre-interview form to Luther, Off. Spears advised Luther that he was being interviewed regarding the crimes of child endangering, pandering obscenity, sexual assault, and anything regarding the safety of children. All of these offenses were written down on the pre-interview form that Off. Spears presented to Luther. *See* State's Exhibit 2. Luther then asked Off. Spears whether he had been accused of the aforementioned offenses. Off. Spears answered affirmatively and explained that they were criminal allegations that would be discussed with Luther during the interview. Luther thereafter asked Off. Spears who was accusing him of the offenses. Off. Spears responded by telling Luther that he could not discuss that

information until he read Luther his rights. Off. Spears then went over all the *Miranda* rights on the pre-interview form with Luther. Luther indicated that he understood each right on the pre-interview form. Luther also indicated that he understood that anything he said during the interview could and would be used against him in a court of law.

{¶ 11} After Off. Spears went over all the rights on the pre-interview form, Off. Spears asked Luther to place his initials next to each right on the form in order to indicate Luther's understanding of his rights. As Luther was initialing the pre-interview form, Luther asked Off. Spears whether he needed a lawyer. Off. Spears responded by saying that he could not answer that question and then reiterated that Luther had the right to get a lawyer and that whether Luther wanted a lawyer was entirely Luther's choice. Luther then asked: "If I'm being accused of stuff then should I probably have one?" Off. Spears responded:

> Again, I can't give you legal advice, that's totally up to you. If you want one, you can ask for one. Umm, if you want to talk first and then you change your mind and say 'I do want a lawyer now,' you can always change your mind later. If you start talking and change your mind you can always go back, your rights are never taken away. So if you want one that's totally fine, it's up to you, we'll have to stop talking now[.]"

State's Exhibit 1 at 11:15:51 a.m. to 11:16:50 a.m.

{¶ 12} Following that discussion, Luther did not ask to have an attorney present at the interview. Luther did, however, ask Off. Spears whether he was going to be arrested. Off. Spears responded by telling Luther that he needed to finish going over the pre-interview form in order to ensure that Luther understood his rights. Off. Spears then

began to review the waiver of rights portion of the pre-interview form, which Luther stated he understood. Off. Spears then asked Luther if he wanted to talk to him. Luther responded by saying that his answer to that question depended on whether he was actually in any sort of trouble. Luther also said that he did not want to waive his rights until he knew what he was facing. To this, Off. Spears told Luther that Luther was going to be arrested for the offenses of pandering obscenity involving a minor and sexual assault. Off. Spears testified that he knew he was going to arrest Luther for these offenses when Luther removed his jacket at the Safety Building and revealed an arm tattoo that matched the arm tattoo of the adult male in the pornographic images at issue.

{¶ 13} After learning that he was going to be arrested, Luther inquired about the identity of the victim. Off. Spears responded by saying that he could not provide that information unless Luther agreed to speak with him. Luther then confirmed with Off. Spears that if he agreed to speak with him that he could stop talking at any point in order to get a lawyer, if necessary. Following that confirmation, Luther agreed to speak with Off. Spears and signed the waiver of rights, which states as follows:

> The above statement of rights has been read to me. I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me. I have completed twelve (12) years of schooling. Belmont High School.

State's Exhibit 2.

{¶ 14} Once the pre-interview form was signed, Off. Spears and Agent Kinzig

questioned Luther for approximately 55 minutes. The interview was calm with no threats or promises made. During the interview, the officers explored Luther's relationships with women and obtained information about Luther's children. The officers also explored Luther's interactions with the children of the women he had had relationships with over the past six years. When Off. Spears presented Luther with the child pornography at issue, Luther confessed to being the adult male shown in the images and to producing the images. Luther also admitted to visiting child pornography websites and to downloading pornographic images depicting children. At the end of the interview, Luther was handcuffed and taken into custody.

{¶ 15} After considering Off. Spears' suppression hearing testimony, the video recording of Luther's interview, and the pre-interview form, the trial court issued a decision overruling Luther's motion to suppress. Concerning Luther's Fifth Amendment claim, the trial court found that Off. Spears Mirandized Luther prior to the interview and that Luther understood his rights. The trial court also found that Luther knowingly, intelligently, and voluntarily waived his rights and made voluntary statements to the officers during the interview.

{¶ 16} The trial court found that although Off. Spears was initially vague about the investigation, Off. Spears nevertheless advised Luther, before Luther waived his rights, that Luther was being accused of child endangering, pandering obscenity, and sexual assault, and that Luther was going to be questioned regarding those offenses. The trial court additionally found that because the officers did not threaten Luther, provide false statements to Luther, overbear Luther's will, impair Luther's capacity for self-determination, or make promises in exchange for Luther's statements, there was no

coercive police conduct that rendered Luther's statements to the officers involuntary.

{¶ 17} With regard to Luther's Sixth Amendment claim, the trial court found that Off. Spears advised Luther of his right to counsel and that Luther indicated his understanding of that right. The trial court further found that Luther's act of simply asking Off. Spears whether he needed an attorney was not an unequivocal, unambiguous invocation of his right to counsel. The trial court therefore determined that Luther was not denied his Sixth Amendment right to counsel.

{¶ 18} After the trial court overruled Luther's motion to suppress, Luther entered a no contest plea to all the charges in the indictment. The trial court accepted Luther's no contest plea and found Luther guilty as charged. The trial court then sentenced Luther to an aggregate term of 26 years to life in prison. Luther now appeals from his conviction, raising two assignments of error for review.

**First Assignment of Error**

{¶ 19} Under his first assignment of error, Luther claims that the trial court's decision overruling his motion to suppress was erroneous because the trial court failed to conduct a Fourth Amendment illegal seizure analysis. Specifically, Luther claims that his consent to be transported to the Safety Building for purposes of being interviewed was invalid due to Off. Spears initially misrepresenting the nature of the investigation as one concerning a juvenile court matter as opposed to a criminal investigation. In light of the alleged misrepresentation, Luther contends that his transport to the Safety Building constituted an illegal seizure of his person under the Fourth Amendment. Luther claims that pursuant to the fruit of the poisonous tree doctrine, his illegal seizure tainted the

subsequent interview and rendered the statements derived from the interview inadmissible. Luther's claim fails for the following reasons.

{¶ 20} A motion to suppress must "state with particularity the grounds upon which it is made." Crim.R. 47; *State v. Shindler*, 70 Ohio St.3d 54, 56, 636 N.E.2d 319 (1994); *State v. Tyner*, 2d Dist. Montgomery No. 25405, 2014-Ohio-2809, ¶ 13. "The prosecutor must know the grounds of the challenge in order to prepare his case, and the court must know the grounds of the challenge in order to rule on evidentiary issues at the hearing and properly dispose of the merits." *Xenia v. Wallace*, 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1988). "By requiring the defendant to state with particularity the legal and factual issues to be resolved, the prosecutor and court are placed on notice of those issues to be heard and decided by the court and, by omission, those issues which are otherwise being waived." *Shindler* at 58. Therefore, "[t]he defendant must 'raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor notice of the basis for the challenge.' " *Columbus v. Ridley*, 10th Dist. Franklin No. 15AP-84, 2015-Ohio-4968, 50 N.E.3d 934, ¶ 22, quoting *Xenia* at paragraph one of the syllabus. The failure to do so results in the waiver of that issue on appeal. *Id.*; *State v. Geiger*, 10th Dist. Franklin No. 15AP-1120, 2016-Ohio-7571, ¶ 8.

{¶ 21} In this case, the arguments Luther raised in support of his motion to suppress were confined to whether his Fifth and Sixth Amendment rights were violated during the interview with Off. Spears so as to render Luther's statements inadmissible. Whether Luther was illegally seized in violation of the Fourth Amendment when he was transported to the Safety Building and whether the alleged illegal seizure rendered Luther's statements during the interview inadmissible were not argued before the trial

court. By failing to argue these issues in support of his motion to suppress, Luther has waived them for appeal. "It is settled law that issues raised for the first time on appeal and not having been raised in the trial court are not properly before this court and will not be addressed." (Citations omitted.) *State v. Schneider*, 2d Dist. Greene No. 95-CA-18, 1995 WL 737910, *1 (Dec. 13, 1995).

{¶ 22} That said, even if Luther had raised his Fourth Amendment argument during the suppression proceedings, the argument would have still failed. "The Fourth Amendment to the U.S. Constitution does not permit police officers to arbitrarily search and seize a person at will." *State v. Curry*, 2d Dist. Montgomery No. 11138, 1989 WL 35890, *2 (Apr. 10, 1989), citing *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One exception to this rule is when the individual provides voluntary consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). To rely on the consent exception, "the state must show by 'clear and positive' evidence that the consent was 'freely and voluntarily' given." *State v. Posey*, 40 Ohio St.3d 420, 427, 534 N.E.2d 61 (1988), quoting *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). "[C]onsent obtained through deception cannot be said to have been given freely and voluntarily[.]" *State v. Pi Kappa Alpha Fraternity*, 23 Ohio St.3d 141, 144, 491 N.E.2d 1129 (1986). For example, the Supreme Court of Ohio held that liquor agents who fabricated their identities and the true purpose of their visit to a fraternity house for purposes of receiving consent to enter the fraternity house committed deception that rendered the consent not freely and voluntarily given. *Id.*

{¶ 23} Here, Luther claims that his consent to be transported to the Safety Building

for an interview was not freely and voluntarily given due to Off. Spears deceiving him about the nature of the interview/investigation. Specifically, Luther claims that Off. Spears misled him into believing that he was going to be questioned about a juvenile court matter. The record, however, does not support Luther's claim.

{¶ 24} The record indicates that when encountering Luther at his place of employment, Off. Spears was wearing a Dayton Police lanyard and police badge and identified himself and Agent Kinzig as law enforcement officers. Off. Spears informed Luther that he and Agent Kinzig were investigating a case "concerning the safety of the children that [Luther's] been around * * * including his biological son." Trans. (June 16, 2020), p. 17. Although Off. Spears asked Luther whether his emergency custody hearing in juvenile court was still going forward and advised Luther that he was doing a background investigation, Off. Spears nevertheless made it clear to Luther that he was investigating "[Luther's] past involving the safety of all the kids * * * in his life." *Id.* at 18. When Off. Spears was asked on cross-examination whether he wanted to leave the impression that he was from the juvenile court, Off. Spears responded that he "made it really clear" that he was with the Dayton Police Department. *Id.* The record also indicates that Off. Spears made it clear to Luther that Agent Kinzig was with the FBI. *Id.* at 17.

{¶ 25} Based on the evidence presented at the suppression hearing, there is no indication that Off. Spears affirmatively deceived Luther regarding his identity or the nature of the investigation. Although the trial court found that Off. Spears possibly allowed for some confusion to exist during his initial contact with Luther, the fact remains that Luther knew at all times that he was dealing with law enforcement officers from the

Dayton Police Department and the FBI and that the officers were investigating the safety of the children that Luther had been in contact with. Therefore, unlike the situation in *Pi Kappa Alpha Fraternity* where the officers completely fabricated their identities and their reason for visiting, we do not find that Off. Spears deceived Luther so as to render his consent less than free and voluntary. Accordingly, based on the circumstances here, there is no evidence of an illegal seizure of Luther's person and thus no Fourth Amendment violation.

{¶ 26} Luther's first assignment of error is overruled.

**Second Assignment of Error**

{¶ 27} Under his second assignment of error, Luther contends that his trial counsel provided ineffective assistance by failing to raise the aforementioned Fourth Amendment argument in support of his motion to suppress. We disagree.

{¶ 28} In order to succeed on an ineffective assistance claim, a defendant must establish: (1) his trial counsel's performance was deficient; and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), paragraph two of the syllabus; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.

{¶ 29} "Where the basis of an ineffective assistance of counsel claim is counsel's failure to file a motion to suppress evidence, the defendant making that claim must prove that the basis of the suggested suppression claim is meritorious." *In re D.D.*, 2d Dist.

Montgomery No. 22740, 2009-Ohio-808, ¶ 3, citing *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) and *State v. Pillow*, 2d Dist. Greene No. 2007-CA-95, 2008-Ohio-6046, ¶ 59. "Trial counsel's failure to file a motion to suppress constitutes ineffective assistance of counsel only if the failure to file the motion caused [d]efendant prejudice; that is, when there is a reasonable probability that had the motion to suppress been filed, it would have been granted." (Citations omitted.) *Pillow* at ¶ 59; *State v. Williams*, 2d Dist. Montgomery No. 28299, 2019-Ohio-5142, ¶ 20.

**{¶ 30}** In this case, we have already determined under Luther's first assignment of error that Luther's Fourth Amendment argument would not have succeeded even if the argument had been raised during the suppression proceedings. Therefore, because Luther cannot establish that his motion to suppress would have been granted, Luther cannot establish that counsel's failure to raise the Fourth Amendment argument prejudiced him. Accordingly, Luther's ineffective assistance claim fails.

**{¶ 31}** Luther's second assignment of error is overruled.

## Conclusion

**{¶ 32}** Having overruled both assignments of error raised by Luther, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Charles M. Blue
Hon. Timothy N. O'Connell