Opinion by Judge FERNANDEZ; Dissent by Judge O’SCANNLAIN.
FERNANDEZ, Circuit Judge:
Michael John Albrektsen appeals his conviction after his conditional guilty plea to counterfeiting obligations of the United States. See 18 U.S.C. § 471. He alleges that the police violated his rights under the Fourth Amendment of the United States Constitution when they entered his motel room without a search warrant and without his consent. We agree, and reverse his conviction and remand.
BACKGROUND
On November 30,1996 Michael J. Stanton, an officer of the La Mesa Police Department, was on routine patrol.[1] As he was cruising through the parking lot of the Motel 6 in La Mesa, California, he noticed that Albrektsen’s automobile was parked in a handicapped parking space. Because it was not displaying the required handicapped placard, it was illegally parked. Stanton wrote down the license number, and then went to the motel office where he determined that the driver was Albrektsen, who was a guest at the motel. Stanton also ascertained that an unidentified second person was registered to the motel room. Stanton then ran a vehicle license and criminal records check. He determined that the automobile was registered to Albrektsen and that Albrektsen also had two outstanding misdemeanor bench warrants. Stanton knew that the Motel 6 location was frequented by people who sold or used methamphetamine. He therefore decided that he wanted to search Albrektsen’s room.
Armed with the warrants and that intention, Stanton approached the room and knocked on the door. Albrektsen came to the door and admitted his identity. However, instead of arresting Albrektsen on the spot, Stanton pursued his goal of entering the room. Without asking, he simply walked into the room. Albrektsen moved away from the door because if he had not done so Stanton would have knocked him down while entering.
Once in the room, Stanton asked if he could conduct a search, Albrektsen said “I *953 guess so,” and Stanton then arrested him.[2] During the ensuing search, Stanton found counterfeited currency in various stages of completion, and a computer system which was apparently used in the counterfeiting operation. Albrektsen’s indictment for counterfeiting followed.
Albrektsen moved to suppress the evidence seized from his motel room. He claimed that his Fourth Amendment rights had been violated. The district court denied the motion, and Albrektsen entered a conditional guilty plea to count one of the indictment — counterfeiting obligations of the United States. See 18 U.S.C. § 471. He was sentenced in due course, and this appeal followed.
STANDARD OF REVIEW
We review de novo a district court’s determination that a police officer lawfully crossed the threshold of a dwelling to effect an arrest. See United States v. Litteral, 910 F.2d 547, 553 (9th Cir.1990). We review a determination that a search was voluntarily consented to for clear error. See United States v. Shaibu, 920 F.2d 1423, 1425 (9th Cir.1990). However, we review determinations that specific actions are sufficient to give rise to implied consent de novo. See United States v. Garcia, 997 F.2d 1273, 1281 (9th Cir.1993).
DISCUSSION
Albrektsen asserts that there was not the least reason for Stanton to push into his room for the purpose of arresting him on the misdemeanor warrants. On this record, we agree. Stanton could have fulfilled his obligations by arresting Albrektsen at the doorway, even though his desire to look for evidence of other wrongdoing would then have been thwarted.
We start with a reflection that appears in Los Angeles Police Protective League v. Gates, 907 F.2d 879, 884 (9th Cir.1990):
Nowhere is the protective force of the fourth amendment more powerful than it is when the sanctity of the home is involved. The sanctity of a .person’s home, perhaps our last real retreat in this technological age, lies at the very core of the rights which animate the amendment. Therefore, we have been adamant in our demand that absent exigent circumstances a warrant will be required before a person’s home is invaded by the authorities. (Citations omitted.)
But, says the government, there were warrants in this case, arrest 'warrants. Of course there were, but they formed a necessary rather than a sufficient basis for the entry. They did not, by themselves, allow the invasion of Albrektsen’s motel room.[3] There can be little doubt that police can enter a dwelling for the purpose of executing an arrest warrant. See United States v.Underwood, 717 F.2d 482, 485 (9th Cir.1983) (en banc). That, however, does not mean that officers armed with a warrant can enter a private home at any time or for any reason. Quite the contrary. Because our free society embraces the protections of the Fourth Amendment with appetency, rather than velleity, the courts have demanded more than the mere existence of a warrant.
Thus, the Supreme Court has pointed out that, “an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is unthin.” Payton v. New York, 445 U.S. 573, 603, 100 S.Ct. 1371, 1388, 63 L.Ed.2d 639 (1980) (emphasis added). The *954 Court.reiterated that theme when it said that “[b]ecause an arrest warrant authorizes the police to deprive, a person of his liberty, it necessarily also authorizes a limited invasion of that person’s privacy interest when it is necessary to arrest' him in his home.” Steagald v. United States, 451 U.S. 204, 214 n. 7, 101 S.Ct. 1642, 1649 n. 7, 68 L.Ed.2d 38 (1981) (emphasis added); see also United States v. Route, 104 F.3d 59, 62 (5th Cir.) (“A valid arrest warrant carries with it the implicit but limited authority to enter the residence of the person named in the warrant in order to execute the warrant, where there is ‘reason to believe’ that the suspect is within.”), cert. denied, — U.S. ——, 117 S.Ct. 2491, 138 L.Ed.2d 998 (1997); United States v. Risse, 83 F.3d 212, 216 (8th Cir.1996) (“Under Payton, officers executing an arrest warrant must have a ‘reasonable belief that the suspect resides at the place to be entered ... and [have] reason to believe that the suspect is present’ at the , time the warrant is executed.”). Therefore, cases where there was both a warrant and some reason to believe that the defendant might live at and be present within the premises do not help the government' in this case. See, e.g., United States v. Spencer, 684 F.2d 220, 222 (2d Cir.1982); United States v. Harper, 928 F.2d 894, 896 (9th Cir.1991).[4]
Stanton knew that Albrektsen was not somewhere back in the room; he was standing right before Stanton at the threshold. Stanton agreed that he could have arrested Albrektsen right then, and had no need to push into the room for that purpose. He was correct about that. In United States v. Vaneaton, 49 F.3d 1423, 1425 (9th Cir.1995), cert. denied, 516 U.S. 1176, 116 S.Ct. 1271, 134 L.Ed.2d 218 (1996), we asked, “whether the police, acting with probable cause but without a warrant and while standing outside [Vaneaton’s] motel room, could lawfully arrest him while he was standing immediately inside the open doorway.” We went on to refine the issue when we said that, “the question presented in this case is not decided only on the basis of whether Vaneaton was standing inside or outside the threshold of his room, but whether he ‘voluntarily exposed himself to warrantless arrest’ by freely opening the door of his motel room to the police.” Id. at 1426. Our answer was that, “by opening the door as he did, Vaneaton exposed himself in a public place. His war-rantless arrest, therefore, does not offend the Fourth Amendment.” Id. at 1427. Mutatis mutandis, the same reasoning demonstrates that the arrest of Albrektsen with a warrant could have been effected at the doorway of his motel room. It should have been; there was no need to do otherwise.[5] In fine, it was not “necessary to arrest him” in the depths of the room, and that “invasion of [Albrektsen’s] privacy interest” in order to effect the arrest was, therefore, not authorized. Steagald, 451 U.S. at 214 n. 7, 101 S.Ct. at 1649 n.‘ 7.
In an attempt to salvage the search, the government now argues that the officer was entitled to conduct a sweep in order to protect himself. In doing so, the government seeks to avoid its statement to the district court that it was “not seeking to justify the entry under any form of security sweep at all.” The protective sweep issue is not uninteresting. See, e.g., Maryland v. Buie, 494 U.S. 325, 334, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276 (1990); Ortiz-Sandoval v. Gomez, 81 F.3d 891, 896-97 (9th Cir.1996); United States v. Hoyos, 892 F.2d 1387, 1395-97 (9th Cir.1989); United States v. Delgadillo-Velasquez, 856 F.2d 1292, 1298 (9th Cir. 1988). However, the government’s waiver of the issue perdures. We will not consider the question on appeal. See United States v. Perez, 116 F.3d 840, 845 (9th Cir.1997) (en banc); Raines v. U.S. Parole Comm’n, 829 F.2d 840, 844-45 (9th Cir.1987); United States v. Whitten, 706 F.2d 1000, 1012 (9th *955 Cir.1983). That reduces the explanation for Stanton’s entry into Albrektsen’s room to serve the misdemeanor bench warrants[6] to nothing more than a desire to conduct a general exploratory search.
We can understand the desire, but we do not evince preciosity when we point out that needlessly pushing into a man’s home in order to “ ‘rummage at will among his papers in search of whatever will convict him’” is unacceptable. Chimel v. California, 395 U.S. 752, 767, 89 S.Ct. 2034, 2042, 23 L.Ed.2d 685 (1969). The effect of Stanton’s action was to conduct a search that “went far beyond [Al-brektsen’s] person and the area from which he might have obtained either a weapon or something that could have been used as evidence against him.” Id. at 768, 89 S.Ct. at 2043; see also Whitten, 706 F.2d at 1016 (“[E]ntry into [his] room [cannot] be justified as a search incident to arrest. At time of his arrest in the doorway ... nothing in the room was within his reach.”) The search was accomplished by Stanton’s unnecessary plunge into the room and was unreasonable.
The government makes a final attempt to rescue the search by asserting that Albrektsen at least impliedly consented to the entry of his room. The assertion does rest on a valid legal theory. It is theoretically valid because in somewhat limited circumstances we will find an implied consent to entry. See United States v. Impink, 728 F.2d 1228, 1232 (9th Cir.1984); see also United States v. Rosi, 27 F.3d 409, 412 (9th Cir.1994). We have found consent in a case where the defendant opened his door and after the police said, ‘“we’d like to talk to you,’ ” he said, “ ‘okay,’ nodded and stepped back.” Garcia, 997 F.2d at 1281. On the other hand, we declined to find consent when police contacted a defendant outside of his apartment and he walked back into it without saying anything at all. See Shaibu, 920 F.2d at 1424, 1427. However, the theory does not fit the facts of this case. The argument that it does depends on little more than an amphilogism centered on the word “consent.” A person who must submit or be forced might be said to have consented when he submits,but not in ordinary legal parlence. Here the government emphasizes the fact that Al-brektsen moved aside, but it ignores the more pregnant fact that had he not done so Stanton “could have knocked him down” because entry was going to be made with or without permission. Stanton admitted as much. Albrektsen’s view was the same. As he saw it, he “was forced to move so that the. entering officers would not knock him down.” Consent that is not.
CONCLUSION
Today’s ease demonstrates why our patrol of the boundary between the sanctity of the home and officers of the law must be sempiternal. The laudable desire to detect and stamp out crime continually threatens to undermine the equally laudable protections of the Fourth Amendment. That must not happen.
Thus, we hold that the mere existence of an arrest warrant does not authorize entry into a defendant’s home, where there is no necessity to enter because the defendant can be arrested at the threshold of that home. An officer’s curiosity about the contents of the home must go unsatisfied. Therefore, we overturn Albrektsen’s conviction and remand for further proceedings.
REVERSED and REMANDED.

. The district court did not make specific factual findings, but there were no real disputes of historical fact. Thus, we draw for the most part on the forthright testimony of Officer Stanton at the suppression hearing. See United States v. Rabe, 848 F.2d 994, 997 (9th Cir.1988); United States v. Harrington, 636 F.2d 1182, 1185 (9th Cir.1981).

. The parties dispute whether Albrektsen voluntarily consented to the search. However, the government does not assert that consent would help, if the entry was improper. We are satisfied that the government wisely eschews that assertion. See Wong Sun v. United States, 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963); United States v. Hotal, 143 F.3d 1223, 1227-28 (9th Cir.1998); United States v. Howard, 828 F.2d 552, 556 (9th Cir.1987); see also United States v. Bramble, 103 F.3d 1475, 1478 (9th Cir.1997).

. There is no contention that any relevant distinction is to be drawn between a motel room and a house. See, e.g., United States v. Holzman, 871 F.2d 1496, 1506 (9th Cir.1989), overruled on other grounds, Horton v. California, 496 U.S. 128, 130, 110 S.Ct. 2301, 2304, 110 L.Ed.2d 112 (1990).

. Incidently, decisions of the California courts regarding the State’s knock-notice statute, see, e.g., People v. Hagen, 6 Cal.App.3d 35, 43, 85 Cal.Rptr. 556, 561 (1970), which were issued long before the Supreme Court decided Powell and Steagald, cannot serve to deflect the consequences of an illegal search. Cf. United States v. Peterson, 812 F.2d 486, 492 (9th Cir.1987).

. Of course, this area of the law is very fact specific. If, for example, Albrektsen had retreated from the threshold, Stanton could have followed him in.

. One was issued because Albrektsen had not completed an AIDS counselling class arising out of a misdemeanor simple possession of a controlled substance. The other was issued because he had not completed 24 days of public works service arising out of a misdemeanor driving violation.