OPINION
{¶ 1} Defendant-Appellant, Robert Thomas Luke (Appellant), appeals from the judgment of conviction and sentence entered upon a jury's verdict finding Appellant guilty of one count of Aggravated Murder with a death penalty specification. A timely Notice of Appeal was filed, and on December 8, 2003, counsel for Appellant filed a brief pursuant to Anders v. California
(1967), 388 U.S. 924, 87 S.Ct. 1396, 18 L.Ed. 493 indicating that the within appeal was wholly frivolous. However, in said brief, counsel for Appellant raised four potential Assignments of Error. Those potential Assignments of Error are as follows:
 I. {¶ 2} "Whether the court erred when it denied the appellant's motion to suppress the statements made to police in violation of his miranda warning.
 II. {¶ 3} "Whether the court erred in the admission of crime scene photos and autopsy photos to the jury which had no purpose other than to inflame and/or enrage the jurors' sense of passion.
 III. {¶ 4} "Whether the court erred when it failed to declare a mistrial after prosecutorial misconduct during the rebuttal portion of the state's closing arguments during the penalty phase.
 IV. {¶ 5} "Whether counsel for the appellant rendered ineffective assistance of counsel at the trial level by conceding guilt during the "Guilt Phase" of the trial."
 {¶ 6} Thereafter, on May 21, 2004, counsel for appellant filed a Motion to Withdraw and a certification wherein he certified that Appellant was notified of his right to file a pro se brief. Although Appellant was duly notified, according to said certification, of his right to file a pro se brief, no such brief was filed.
 {¶ 7} The within conviction arose from a judgment of conviction and sentence entered in the Stark County Court of Common Pleas following a jury trial, which included a guilt and penalty phase, wherein the Appellant was convicted of Aggravated Murder, in violation of R.C. 2903.01(C), with a death penalty specification, R.C. 2929.04(A)(9), where the jury recommended a life sentence. We now turn to Appellant's potential Assignments of Error.
 I. {¶ 8} Through his first potential assigned error, Appellant claims that the trial court abused its discretion in refusing to suppress Appellant's statements obtained by police coercion and in violation of Miranda v. Arizona (1966), 384 U.S. 439,86 S.Ct. 1602, 16 L.Ed.2d 694 . We disagree.
 {¶ 9} When considering a motion to suppress, the trial court assumes the role of the trier of fact and, as such, is in the best position to resolve conflicts in the evidence and determine the credibility of witnesses and the weight to be given to their testimony. State v. Retherford (1994), 93 Ohio App. 3d 586,639 N.E.2d 498. The Court of Appeals must accept the trial court's Findings of Fact if they are supported by competent, credible evidence in the record. Retherford, supra. Accepting these facts as true, the appellate court must then independently determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. Retherford, supra.
 {¶ 10} In Miranda v. Arizona, the Court extended the privilege against selfincrimination to individuals subject to compulsory interrogation by the police. The Miranda court held that statements made under custodial interrogation are inadmissible unless the suspect is specifically informed of his Miranda rights and freely decides to forego those rights. Id.
 {¶ 11} In deciding whether a defendant's confession is voluntary, the Court should consider the totality of the circumstances, including the age, mentality, and/or the prior criminal experience of the accused; the length, intensity, and frequency of interrogation: the existence of physical deprivation or mistreatment; and the existence of threat or inducement,State v. Edwards (1976), 49 Ohio St.2d 31, 358 N.E.2d 1051, paragraph two of syllabus. A statement is only involuntary if the evidence shows that the suspect's will was overborne and his capacity for self-determination was critically impaired due to coercive police conduct. State v. Daily (1990),53 Ohio St.3d 88, 91-92, 559 N.E.2d 459, 463, citing, Colorado v. Connelly
(1986), 479 U.S. 157, 170, 107 S.Ct. 515, 523, 93 L.Ed.2d 473,486. Furthermore, without police coercion, the purported ingestion of drugs or alcohol does not render a suspect's statement involuntary. State v. Smith (1997), 80 Ohio St.3d 89,1997-Ohio-355, 684 N.E.2d 668, cert. denied, 523 U.S. 1125,118 S.Ct. 1811; Colorado v. Connelly (1986), 479 U.S. 157,105 S.Ct. 515, 93 L.Ed.2d 473.
 {¶ 12} The public safety doctrine is an exception to theMiranda requirement. The public safety doctrine excuses compliance with Miranda, where exigent circumstances exist and where there is an immediate need to protect the general public, an individual person, or the officer involved. In these public safety situations, there is an overriding need to save a human life, or to rescue persons whose lives are in danger. New Yorkv. Quarels (1984), 467 U.S. 649, 104 S.Ct. 2626, 16 L.Ed.2d 694
("The doctrinal underpinnings of Miranda do not require that it be applied in all its rigor to a situation in which police officers ask questions reasonably prompted by concern for public safety."); See also, State v. Taylor, Ninth App. District, Lorain County, Case Nos. 92CA005313 and 92CA005314, (decided December 16, 1992), unreported.
 {¶ 13} In this case, on the morning following the child's death, the Appellant walked from his apartment to the Canton Police Station and sought out two police officers, who were seated in a marked cruiser. When he arrived at the cruiser, the Appellant was visibly covered in blood. The Appellant approached the officers' cruiser, initiated a conversation, and stated that he was turning himself in for killing his son. This unsolicited confession occurred prior to any police interrogation.
 {¶ 14} Due to the nature of the Appellant's unsolicited statement and his physical condition, the officers immediately conducted a Terry pat-down search for weapons and recovered a blood covered knife. The Appellant was then taken into custody and placed in the cruiser. Admittedly, without providing aMiranda warning, the officers then questioned the Appellant with regards to the name and location of his infant son. The officers testified that their intention was to gather more information in this seemingly lifethreatening situation and attempt to provide emergency assistance to the child. The Appellant responded by providing the officers with the child's location and stated, "He's [the child's] not human anymore." After the conversation, the officers immediately dispatched emergency assistance to the child's location and transported the Appellant to the police station.
 {¶ 15} At the police station, the Appellant was placed in the detective bureau interview room. Detective Boudreax read the Appellant his Miranda rights. Due to the bloody condition of the Appellant's hands, and in an effort to preserve evidence, the Appellant was not asked to sign a Constitutional Rights Waiver Form. However, after being Mirandized, the Appellant verbally indicated that he wished to waive his rights and proceeded to voluntarily provide the officer with a brief taped statement. The Appellant was then transported to the hospital for an examination of the self-inflicted injury to his arms.
 {¶ 16} After being examined and released by the hospital, Appellant was returned to the police station, and once again placed in the detective bureau interview room. The Appellant was then questioned a second time. Prior to questioning, in two separate circumstances, Detective Baroni read the Appellant his constitutional rights. In both instances, the Appellant indicated that he understood his rights and agreed to give a statement to the officer. Appellant also executed a Constitutional Rights Waiver Form.
 {¶ 17} In addition to these facts, the trial court found that the Appellant was a twenty-three-year-old male; that he had consumed some alcohol and marijuana on the evening preceding the morning in which he arrived at the police station, but that there was no evidence that he was under the influence of any alcohol or drugs at the time of questioning; and, that he did not exhibit any signs of mental illness. The trial court also found that the Appellant was permitted to have food and water and to use the restroom facilities. The trial court further found that no promises had been made to the Appellant in exchange for his statement and that the officers had not mistreated the Appellant or engaged in any other inappropriate conduct.
 {¶ 18} The trial court did not abuse its discretion in overruling Appellant's motion to suppress and, therefore, the Appellant's first assignment of error has no merit. The Findings of Fact set forth by the trial court, are supported by the record. The record indicates that the Appellant's initial incriminating statements were voluntarily initiated prior to any custody or interrogation by the officers. Furthermore, the statement which the Appellant made immediately after being placed in police custody fell firmly within the public safety exception to Miranda and the questions which were asked by the officers were not designed solely to elicit testimonial evidence. During the two subsequent interrogation sessions which took place at the police department, Appellant was provided several times with aMiranda warning both in verbal and written form. On each occasion, the Appellant indicated that he understood his Constitutional rights, executed a waiver of rights form and proceeded to knowingly, intelligently and voluntarily provide the officers with incriminating statements regarding his role in the stabbing death of his child. For these reasons, we hereby overrule Appellant's first potential Assignment of Error.
 II. {¶ 19} Through his second potential assigned error, Appellant claims that the trial court abused its discretion in permitting the introduction of inflammatory and highly prejudicial crime scene and autopsy photographs of the deceased child. We disagree.
 {¶ 20} Evid.R. 403(A) manifests a definite bias in favor of the admission of relevant evidence. In order to reject relevant evidence, the dangers associated with the potentially inflammatory nature of the evidence must substantially outweigh its probative value. It is well settled that the admission of photographs is left to the discretion of the trial court. Statev. Smith, (1997), 80 Ohio St.3d 89, 1997-Ohio-355,684 N.E.2d 668, "[A]lthough a trial court may reject a photograph, otherwise admissible, due to its inflammatory nature * * * the mere fact that a photograph is gruesome or horrendous is not sufficient to render it per se inadmissible" pursuant to Evid.R. 403(A). Statev. Maurer (1984), 15 Ohio St.3d 239, 264-265, 473 N.E.2d 768; see also, State v. Woodards (1966), 6 Ohio St.2d 14, 25,215 N.E.2d 568.
 {¶ 21} The trial court's decision to admit evidence will not be reversed unless the court has clearly abused its discretion and the defendant has been materially prejudiced thereby. Statev. Slagle (1992), 65 Ohio St.3d 597, 602, 605 N.E.2d 916. See also, State v. Hymore (1967), 9 Ohio St.2d 122, 128,224 N.E.2d 126. An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the trial court that is unreasonable, unconscionable, or arbitrary. FranklinCty. Sheriff's Dept. v. State Emp. Relations Bd. (1992),63 Ohio St.3d 498, 506, 589 N.E.2d 24.
 {¶ 22} During the trial, the State indicated that in the course of the investigation, they had accumulated thirty-one photographs of the child as he appeared after he had been stabbed to death. Over Appellant's objection, the State moved for the admission of two of the thirty-one photographs. The photographs which were admitted, depicted the child in a bed full of blood, encompassed by a pile of blankets. The trial court admitted the photographs and held that the photographs were admissible because they were consistent with Appellant's confession and probative of Appellant's purpose to cause the child's death.
 {¶ 23} Appellant's second potential assignment of error has no merit. The trial court's decision to admit the two photographs was not unreasonable, unconscionable or arbitrary. The photographs demonstrated the severity of the victim's injuries and Appellant's purpose to cause the child's death. Appellant cannot establish that the potential unfair prejudice of the photos substantially outweighed their probative value. For these reasons, we hereby overrule appellant's second potential assignment of error.
 III. {¶ 24} Through his third potential assigned error, appellant claims that the prosecutor committed misconduct during the rebuttal portion of the closing argument in the trial's penalty phase. We disagree.
 {¶ 25} The test for misconduct is whether the prosecutor's remarks were improper and, if so, whether they prejudicially affected the substantial rights of the accused. State v. Smith
(1984), 14 Ohio St.3d 13, 470 N.E.2d 883. During the mitigation phase of a death penalty trial, prosecutors may legitimately make remarks regarding the nature and circumstances of the underlying offense. These remarks may both refute any suggestion that the circumstances are somehow mitigating and explain why the specified aggravating circumstances outweigh any mitigating factors. State v. Sheppard (1998), 84 Ohio St.3d 230, 238,703 N.E.2d 286, 294. Prosecutors can also urge the merits of their cause and legitimately argue that the defense mitigation is worthy of little or no weight. State v. Wilson (1996),74 Ohio St.3d 381, 399, 659 N.E.2d 292, 309.
 {¶ 26} In this case, during the penalty phase, the Appellant made two objections to the prosecutor's rebuttal argument. In the first instance, the Appellant objected to the State's characterization of the Appellant as being a "cold blooded killer", who took the life of a 32-month-old child whom he had just taken to the park, played with, and placed in bed to dream about the time he would spend with his father "tomorrow", essentially, a tomorrow that never arrived. The Court overruled the Appellant's objection. In the second instance, the prosecutor argued that the Appellant deserved a death sentence and not a life sentence "for a cold, calculated murder" because he took the life of a thirty-two-month-old child "savagely and brutally". The Appellant's objection to the comment was sustained and the comment was stricken by the court. After the jury instruction, the Appellant moved for a mistrial based on prosecutorial misconduct. The trial court overruled Appellant's motion. After deliberations, the jury imposed a life sentence. This is the exact sentence which the Appellant had repeatedly requested the jury to consider throughout the guilt and penalty phases of the trial.
 {¶ 27} Appellant's third potential assignment of error has no merit. The remarks by the prosecutor do not rise to the level of prosecutorial misconduct. Furthermore, assuming arguendo that the remarks were improper, we do not find that the Appellant was prejudiced. Our review of the record indicates that the Judge corrected any alleged errors with his order to strike the comments. Furthermore, the Appellant received the penalty he requested. For these reasons, we hereby overrule Appellant's third potential Assignment of Error.
 IV. {¶ 28} Through his fourth potential assigned error, appellant claims that his attorney provided ineffective assistance by conceding Appellant's guilt at the trial on the charge of Aggravated Murder. We disagree.
 {¶ 29} In order to demonstrate ineffective assistance of counsel, the Appellant must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness, and, (2) that counsel's deficient performance prejudiced him. See, Strickland v. Washington (1984), 466 U.S. 668, 694,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. To establish prejudice, the petitioner must demonstrate that counsel's deficient performance "so undermined the proper functioning of the adversarial process, that the trial could not have reliably produced a just result."State v. Powell (1993), 90 Ohio App.3d 260, 629 N.E.2d 13, citing Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838,122 L.Ed.2d 180 and Strickland, Supra. Attorneys licensed by the State of Ohio "are presumed to provide competent representation." State v. Hoffman (1998), 129 Ohio App.3d 403,407, 717 N.E.2d 1149
 {¶ 30} "Concessions of guilt by defense counsel must be considered on a caseby-case basis. All of the facts, circumstances, and evidence must be considered." State v.Goodwin, (1999), 84 Ohio St.3d 331, 338, 1999-Ohio-356,703 N.E.2d 1251. When defense counsel concedes his client's guilt to a charge in an effort to enhance credibility by being candid and realistic with the jury, such a decision may be construed as tactical or strategic and, therefore, does not constitute ineffective assistance of counsel. Id. at 338-339, 703 N.E.2d 125.
 {¶ 31} Appellant's fourth proposed Assignment of Error has no merit. Having reviewed the entire transcript, this Court concludes that the concession made by the defense counsel regarding Appellant's guilt was reasonable in light of the evidence. Appellant admitted to stabbing his son and causing the death of the thirty-two-month-old child. Counsel's trial strategy was not to acquit the Appellant, but rather to convince the jury that they should recommend a life sentence, rather than a death sentence. Counsel's strategy proved to be successful. Therefore, counsel's admission of guilt was a reasonable strategic decision and did not constitute deficient representation. For these reasons, we hereby overrule Appellant's fourth potential Assignment of Error.
 {¶ 32} For the reasons stated herein above, we hereby overrule Appellant's proposed Assignments of Errors and affirm the judgment of conviction and sentence entered in the Stark County Court of Common Pleas.
Edwards, J. Hoffman, P.J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of conviction and sentence of the Stark County Court of Common Pleas is affirmed. Costs taxed to Appellant.
 JUDGMENT ENTRY
This matter came before the Court for consideration of Attorney Herb Morello's Motion to Withdraw as Counsel. Attorney Morello has filed an Ander's brief with this Court on Appellant's behalf. Counsel's motion is well taken. Attorney Morello is hereby permitted to withdraw as counsel for Appellant.
MOTION GRANTED.
IT IS SO ORDERED.