[Cite as *State v. Gordon*, 2025-Ohio-1229.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| JASON GORDON | : | Case No. 2024 AP 06 0021 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:       Appeal from the  Court of Common
                               Pleas, Case No. 2022 CR 03 0059

JUDGMENT:                      Affirmed

DATE OF JUDGMENT:              April 7, 2025

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

KRISTINE W. BEARD                         DONAVAN R. HILL
125 East High Avenue                      122 Market Avenue North
New Philadelphia, OH  44663               Suite 101
                                          Canton, OH  44702

*King, J.*

{¶ 1}   Defendant-Appellant Jason M. Gordon appeals the May 9, 2024 judgment of conviction and sentence of the Tuscarawas County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio. We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   This matter arose when one of the victims, J.M., disclosed to her therapist that she had been sexually abused by her cousin, Gordon, when she was under 10 years of age. This disclosure led to an investigation which resulted in the discovery of two additional victims, A.G. and P.S. A.G. lived in the same neighborhood as Gordon when she was a child and Gordon lived with P.S. when she was a child. Officers contacted both women who confirmed Gordon had sexually assaulted them as children, engaging in both sexual contact and conduct when they were under 10 years of age.

{¶ 3}   Based on these disclosures, on March 4, 2022, the Tuscarawas County Grand Jury returned an indictment charging Gordon with three counts of rape of pursuant to R.C. 2907.02(A)(1)(b), R.C. 2907.02(B), felonies of the first degree, and three counts of gross sexual imposition pursuant to R.C.  2907.05(A)(4), 2907.05(C)(2), felonies of the third degree.

{¶ 4}   On July 22, 2022, Gordon pled guilty as charged. On September 15, 2022, Gordon's pleas were vacated upon discovery that Gordon's Acknowledgement of Guilty Plea form had erroneously represented the sentencing range for the rape charges. Gordon's original counsel, Attorney DeLaCruz was permitted to withdraw his representation of Gordon and Attorney Drake was appointed to represent Gordon.

{¶ 5}   On March 13, 2023, Attorney Drake filed a motion for a competency evaluation. On August 30, 2023, following a hearing on the matter, the court found the competency evaluation deemed Gordon capable of understanding the nature and objectives of the proceedings against him and of assisting in his defense. Attorney Drake requested a second competency evaluation and the trial court granted the same. On November 2, 2023, Gordon was again deemed capable of understanding the nature and objectives of the proceedings against him and of assisting in his defense. The trial court therefore found Gordon competent to stand trial.

{¶ 6}   On November 13, 2023, Attorney Drake filed a motion for a sanity evaluation. The trial court ordered a sanity evaluation and reviewed the report on January 11, 2024. The record contains nothing indicating the results of the examination or the trial court's findings, however, the matter was next set for trial.

{¶ 7}   Gordon wrote a letter to the court on April 15, 2024, eight days before his scheduled trial, which indicated he told Attorney Drake about a third interview video with law enforcement and Attorney Drake did not believe the video existed. Gordon further alleged that Attorney Drake hardly answered his calls, and hardly saw him in person. Gordon stated he was confused about what was going on and was not ready for trial.

{¶ 8}   The matter proceeded to trial on April 23, 2024. Immediately before trial the trial court addressed Gordon's letter. Attorney Drake admitted he had not believed Gordon when he said there was a third interview. The trial court questioned Captain Detective Ty Norris of the New Philadelphia Police Department about the interview. The Captain confirmed he had talked to Gordon about an unrelated case, that there had been a recording of the interview that no longer existed, and no new information was obtained in

regard to the instant charges. Transcript of trial (T.) at 7, 17-18, 20. The trial court additionally questioned counsel and Gordon regarding the remaining contents of Gordon's letter. Gordon agreed to go forward with Attorney Drake representing him. T. 23.

{¶ 9} The state presented testimony from seven witnesses; two police investigators, all three victims, one victim's mother, and a forensic interviewer. Jurors viewed the two recorded interviews conducted by law enforcement with Gordon wherein Gordon admitted to sexual contact with each victim. State's exhibits E and F. The victims each testified sexual conduct and contact took place. Gordon testified in his own defense. He admitted to sexual contact with each victim but denied sexual conduct.

{¶ 10} After hearing the evidence and deliberating, the jury convicted Gordon as charged. Gordon was subsequently sentenced to an aggregate total of 55 years to life and was classified as a Tier III sex offender.

{¶ 11} Gordon timely filed an appeal and the matter is now before this court for consideration. He raises four assignments of error as follow:

I

{¶ 12} "THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BY PERMITTING TRIAL COUNSEL TO CONTINUE TO REPRESENT APPELLANT WHEN THERE WAS A CLEAR BREAKDOWN IN COMMUNICATION. "

II

{¶ 13} "APPELLANT'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED BECAUSE TRIAL COUNSEL'S

PERFORMANCE TAKEN AS A WHOLE WAS SO DEFICIENT AND PREJUDICIAL THAT IT DEPRIVED APPELLANT OF A FAIR TRIAL.

III

{¶ 14} "APPELLANT'S CONVICTIONS OF RAPE WERE NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE."

IV

{¶ 15} "APPELLANT'S CONVICTIONS OF RAPE WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I

{¶ 16} In his first assignment of error, Gordon argues the trial court failed to conduct an adequate inquiry into whether the relationship between himself and his counsel had deteriorated to the point that warranted a substitution of counsel. We disagree.

*Applicable Law*

{¶ 17} A defendant bears the burden of demonstrating that substitute counsel is warranted. *State v. Carter*, 128 Ohio App.3d 419, 423, (1998). "Where, during the course of his trial for a serious crime, an indigent accused questions the effectiveness and adequacy of assigned counsel, * * * it is the duty of the trial judge to inquire into the complaint and make such inquiry a part of the record." *State v. Deal,* 17 Ohio St.2d 17, syllabus (1969). The inquiry may be brief and minimal, and the duty to inquire is only triggered by allegations that are sufficiently specific. *State v. Ketterer*, 2006-Ohio-5283, ¶ 139. "The trial judge may then require the trial to proceed with assigned counsel participating if the complaint is not substantiated or is unreasonable." *Deal*, at syllabus.

{¶ 18} The trial court's decision is reviewed under an abuse-of-discretion standard. *U.S. v. Iles*, 906 F.2d 1122,1130, fn. 8. "Abuse of discretion" means an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87 (1985). Most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. *AAAA Ent., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161 (1990). An unreasonable decision is one backed by no sound reasoning process which would support that decision. *Id.* "It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

*Gordon's Argument*

{¶ 19} Gordon argues it was unreasonable for the trial court to permit the trial to go forward with Attorney Drake representing him because the breakdown in communication between he and Mr. Drake had deteriorated to the extent that Gordon's right to effective assistance of counsel was jeopardized. He additionally suggests the trial court failed to adequately inquire into his concerns about his appointed counsel. The record, however, reflects that despite not initially believing there was a third interview, Drake made every effort to communicate with Gordon and obtain the best possible result for Gordon and the trial court adequately addressed the matter.

{¶ 20} Twelve days before Gordon wrote his letter, the court held a pre-trial hearing to address concerns raised by Attorney Drake regarding the conversations he had with Gordon as well as Gordon's rejection of the State's plea offer. Attorney Drake indicated

he had showed Gordon the two video interviews with law enforcement which Gordon had voluntarily participated in, had explained the futility of filing a motion to suppress the videos given Gordon's voluntary participation, explained the fact that Gordon had been found competent to stand trial on two occasions, and the fact that he had confessed to sexual contact with each victim. Attorney Drake also indicated he had discussed the State's plea offer with Gordon which would include the recommendation of 15 years to life rather than the possibility of life without parole he would face if he were to go to trial and lose. After discussion with the court and being given time to discuss the matter privately with Attorney Drake, Gordon indicated he still desired to go to trial. Transcript of Pre-Trial Hearing, April 3, 2024 2-8, 10-12. Gordon did not raise any concerns about Attorney Drake's representation during the hearing.

{¶ 21} On April 15, 2024, Gordon wrote his letter to the trial court complaining of Attorney Drake's performance. In his letter he stated Attorney Drake had dismissed his claims of the existence of a third interview with law enforcement, and did not call or visit him enough. Additionally, Gordon stated he did not know what was going on and was not ready to go to trial. Gordon did not, however, request new counsel. Letter, filed April 18, 2024, docket item 130.

{¶ 22} The morning of trial, the trial court addressed Gordon's letter. Attorney Drake admitted he had not believed Gordon's claim of a third interview, T. 6. Gordon had advised Attorney Drake that a third interview took place wherein Gordon had stated he told officers he was coerced during the first two interviews. T. 13. Both the state and the defense were aware of only two interviews. T. 6, 10. Captain Norris advised the trial court that the third interview had taken place more that a year prior, pertained to a separate

matter, and no new information was obtained in regard to the present matter. T. 7, 17, 20. The trial court advised Gordon of remedies available due to the possible discovery violation. The court further noted the matter had been pending for two years, Attorney Drake had been representing Gordon for more than a year and had explored several avenues of defense on Gordon's behalf. T. 20-22. This court notes Gordon had raised no concerns regarding his counsel's performance until just days before trial and after an extensive pretrial wherein the trial court and counsel spent time explaining the status of the case and giving Gordon time to ask questions and weigh his options. Moreover, when asked if he wanted another attorney Gordon stated "I think Mr. Drake will do so that we can proceed." T. 23.

{¶ 23} The record does not support Gordon's argument that the trial court's inquiry was dismissive or lacked substance. The trial court addressed the concerns Gordon raised. Nor does the record support Gordon's allegation that the relationship between himself and trial counsel had deteriorated to the point that he no longer had adequate representation. Accordingly, we find the trial court did not abuse its discretion by permitting the trial to go forward with Attorney Drake representing Gordon. The first assignment of error is overruled.

II

{¶ 24} In his second assignment of error, Gordon argues he was denied effective assistance of counsel. We disagree.

*Applicable Law*

{¶ 25} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell

below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶ 26} Because there are countless ways to provide effective assistance in any given case, judicial scrutiny of a lawyer's performance must be highly deferential. *Strickland*, 466 U.S. 668 at 694. "Decisions on strategy and trial tactics are granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers." *State v. Quinones*, 2014-Ohio-5544, ¶ 18 (8th Dist.).

### *Gordon's Arguments*

{¶ 27} Gordon raises several arguments and further asks this court to consider a cumulative analysis of ineffective assistance of counsel. We address each argument in turn.

### *Exculpatory Evidence*

{¶ 28} Gordon first argues trial counsel rendered ineffective assistance by failing to investigate potentially exculpatory evidence, specifically the existence of a third interview wherein Gordon claimed he allegedly recanted his previous admissions and stated he only made the admissions because he was pressured to do so.

{¶ 29} As discussed above, the existence of a third interview and remedies were discussed before trial. An officer involved in the third interview advised the trial court that

the interview pertained to an unrelated matter and that no new information was sought or obtained related to the instant matter. T.7. Additionally, we note that against the advice of counsel Gordon took that stand in his own defense. At no point during Gordon's testimony did he state he was pressured into making his disclosures to law enforcement. The record therefore reflects that the matter of the third interview was adequately explored, and Gordon cannot demonstrate prejudice.

*Waiver of Opening Statement*

{¶ 30} Gordon next faults his counsel for failing to make an opening statement. Ohio courts, however, have long held that the decision to waive opening statement is a tactical decision that does not rise to the level of ineffective assistance of counsel. *State v. Williams*, 74 Ohio App.3d 686, 700 (2001); *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989). We therefore reject Gordon's argument.

*Derogatory Comments by Counsel During Closing Argument and Mention of Potential Penalties*

{¶ 31} Gordon next challenges the manner in which counsel conceded guilt for gross sexual imposition, Counsel referred to Gordon's actions as "sick," "repulsive," and referred to him as a "sex offender," and mentioned he would be going to prison.

{¶ 32} "Concessions of guilt, in any form, are among the most troublesome actions a defense counsel can make during representation of a defendant." *State v. Goodwin*, 84 Ohio St.3d 331, 336 (1999). "Concessions of guilt by defense counsel must be considered on a case-by-case basis. All of the facts, circumstances, and evidence must be considered." *Id.* at 338.

{¶ 33} We recently noted that a concession of guilt to avoid a more severe sentence is sound trial strategy. *State v. Ducksworth*, 2025-Ohio-480 ¶ 12 (5th Dist.) citing *State v. Luke*, 2004-Ohio-6137, ¶ 31 (5th Dist.). On review of the record we note counsel's closing argument amounted to conceding Gordon was guilty of three counts of gross sexual imposition, was likely going to prison for those offenses and would be classified as a sex offender, but was nonetheless not guilty of three counts of rape. T. 331-335. We find counsel's concessions to non-life-term offenses in an attempt to convince the jury to acquit Gordon of the life-term offenses was sound trial strategy.

{¶ 34} We further note the evidence against Gordon was staggering. The jury viewed two interviews that Gordon voluntarily participated in and wherein he admitted he engaged in sexual contact with the victims. The jury further learned Gordon was initially contacted by law enforcement regarding the allegations of only one victim. But it was Gordon who advised law enforcement of two more victims. State's Exhibits E and F. Gordon then took the stand in his own defense and again confessed to sexual contact with all three victims. T. 319. Each victim testified to specific instances of sexual conduct. Therefore, even if we were to find defense counsel's choice of words fell below a reasonable standard of representation, Gordon still cannot demonstrate prejudice.

*Cumulative Error*

{¶ 35} In *State v. Brown*, 2003-Ohio-5059, the Supreme Court of Ohio recognized the doctrine of cumulative error. The cumulative error doctrine does not apply, however, where the defendant "cannot point to 'multiple instances of harmless error.' " *State v. Mammone*, 2014-Ohio-1942 ¶ 148 quoting *State v. Garner*, 74 Ohio St.3d 49 (1995).

Because we have found no error in counsel's performance and Gordon has failed to demonstrate prejudice, cumulative error is inapplicable.

{¶ 36} The second assignment of error is overruled.

III, IV

{¶ 37} We address Gordon's remaining assignments of error together. In these assignments of error, Gordon argues his rape convictions are not supported by sufficient evidence and are against the weight of the evidence. We disagree.

*Standard of Review*

{¶ 38} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).  See also, *State v. Thompkins*, 78 Ohio St.3d 380 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

*Gordon's Argument*

{¶ 39} Gordon was charged with three counts of rape involving a child under the age of 10 pursuant to 2907.02 (A)(1)(b), R.C.2907.02(B). To prove the charges the State was required to show Gordon engaged in sexual conduct with each of the victims, specifically digital penetration and cunnilingus, when each was under ten years of age.

{¶ 40} Gordon concedes that each woman testified he had engaged in sexual conduct with them including digital penetration and cunnilingus when they were under 10 years of age. Brief of Appellant at 19. Gordon's arguments thus challenge the weight of the evidence rather than sufficiency as he questions the ability of the victims to correctly recall incidents that took place years ago, faults the women for their delayed disclosure, and accuses them of "misremembering" penetration. However, the testimony of one witness, believed by the trier of fact is sufficient to prove any fact at issue. *State v. Frazier*, 2005-Ohio-3766, ¶ 14 (5th Dist.). The testimony of each of the women regarding sexual conduct, if believed by the trier of fact was therefore sufficient to support a finding of sexual conduct.

{¶ 41} Moreover, the victims explained their recollection or delayed disclosures. A.G. testified she recalled the incidences because "I was seven," and it was "a traumatic experience." T. 238. A.G. stated she did not tell anyone as a child because she initially did not know it was wrong, and then did not think anyone would believe her. T. 241. J.M. testified she refrained from disclosing her abuse at the hands of Gordon for fear of breaking up her family or being ostracized by members of her family. T. 257. P.S. testified she was afraid to tell when she was a child for fear of being in trouble or being taken away

from her family like Gordon and his siblings had been taken away from their family, and as she got older she felt ashamed. T. 285.

{¶ 42} Finally, it was Gordon who advised officers investigating J.M.'s allegations that he had molested two additional children, A.G. and P.S. At trial, the jury viewed two recorded interviews between Gordon and law enforcement wherein Gordon admitted to touching the girls when he was 18 or 19 but indicated the girls "came on to" him, "made" him touch them, and undressed him. State's Exhibits E and F. Gordon took the stand in his own defense and admitted he had touched all three victim's vaginal areas, but denied digital penetration or cunnilingus. T. 318.

{¶ 43} Upon review, we find the state produced sufficient evidence to support Gordon's convictions. We further find the jury did not lose its way in believing the State's evidence over Gordon's and concluding Gordon had engaged in sexual conduct with the women when they were children. We therefore find his convictions are not against the manifest weight of the evidence. Accordingly, the third and fourth assignments of error are overruled.

{¶ 44} The judgment of the Tuscarawas County Court of Common Pleas is affirmed.


By: Baldwin, P.J.

Hoffman, J. and

King, J. concur.